IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BARBARA RICHARDS, et al.,

    Plaintiffs,

    v.

MORGAN STANLEY, et al.,

    Defendants.

CIV-S-04-2564 DFL DAD

<u>MEMORANDUM OF OPINION
AND ORDER</u>

Defendants Morgan Stanley Dean Witter, Michael Jennings, and John Polhemus move to compel arbitration of plaintiffs' claims against them. For the reasons stated below, defendants' motion is granted in part and denied in part.

I.

Plaintiff Barbara Richards alleges that she received a "cold call" in 1992 from Michael Jennings, a securities broker who at that time worked for Kemper Securities. (Compl. ¶ VIII.) Richards alleges that Jennings eventually induced her to let him

1

1  manage her investments. (Id.) In 1993, Jennings transferred his
2  license and Richards's account to Dean Witter. (Id. ¶ IX.) John
3  Polhemus was Jennings' manager at Dean Witter. (Id.) Richards
4  subsequently opened several accounts, both in her individual
5  capacity and as trustee of three different trusts. Richards also
6  provided funding, as settlor, for a fourth trust account, the
7  Irrevocable Life Insurance Trust account, with plaintiff Richard
8  Keene as the account holder and trustee. Plaintiffs allege that
9  from 1993 to 2003, Jennings engaged in "churning" of these
10 accounts, making trades solely for the purpose of generating
11 commissions. (Id. ¶¶ I, XI, XII.) Plaintiffs also allege that
12 Jennings encouraged Richards to sell her real estate and actively
13 participated in the sale in order to generate more funds for the
14 securities accounts. (Id. ¶ XIV.)

15     Jennings met with Richards many times over lunch to discuss
16 her investments and to give her various documents to sign.
17 (Richards Decl. ¶ 7.) Among these documents were at least four
18 agreements containing an arbitration clause: a 1996 Margin Client
19 Agreement, a 1999 Investment Client Agreement, and two 2001
20 Investment Client Agreements. (Thomases Decl. Exs. A-D.) The
21 1996 arbitration provision, which is generally representative,
22 states:

> You agree that all controversies between you or your
> principals or agents or Dean Witter or its agents
> (including affiliated corporations) arising out of or
> concerning any of your accounts, orders or
> transactions, or the construction, performance or
> breach of this or any other agreement between us,
> whether entered into before or after the date an

2

>       account is opened, shall be determined by arbitration
>       only before the New York Stock Exchange, Inc.; the
>       National Association of Securities Dealers, Inc.; or
>       the Municipal Securities Rulemaking Board, as you
>       may elect.

(Id. Ex. A.)  Jennings retired in 2002, but plaintiffs allege that he continued to manipulate Richards's accounts by turning over the accounts to John Polhemus.  (Compl. I, XV.)

Plaintiffs assert ten causes of action against defendants based on this alleged course of conduct: (1) fraudulent mismanagement of accounts; (2) excessive and authorized trading of securities account (the alleged "churning"); (3) fraudulent inducement to open a discretionary account; (4) broker's breach of fiduciary duty; (5) financial abuse of an elder; (6) unjust enrichment/restitution; (7) a "common count" based on defendants' indebtedness to plaintiff; (8) negligence; (9) violation of 18 U.S.C. § 1962(a); and (10) violation of 18 U.S.C. § 1962(c). Defendants move to compel arbitration of all counts based on the arbitration provisions in the four contracts.

## II.

The Federal Arbitration Act ("FAA") creates a federal policy favoring arbitration and requires the court, upon motion of a party, to compel arbitration upon finding that a valid arbitration agreement exists and that the claims are arbitrable. 9 U.S.C. §§ 2, 4; Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927 (1983); Dean Witter Reynolds, Inc. v. Bryd, 470 U.S. 213, 218, 105 S.Ct. 1238 (1985).

3

A. Existence of Arbitration Agreement for All Trusts

As a threshold matter, the court must determine whether the arbitration clauses, if valid, apply to all of the trust accounts.  Plaintiffs concede that the claims of the Revocable Trust and the Charitable Remainder Trust are subject to an arbitration clause.  (Supplemental Wilson Decl. at 2.)  However, plaintiffs contend that the Education Foundation Trust and the Irrevocable Life Insurance Trust are not subject to any arbitration agreement.  (Id.)

The arbitration clauses in the contracts are broad and cover all controversies arising out of or pertaining to "any of your accounts" with Morgan Stanley.  (Thomases Decl. Exs. A-D.)  In light of the broad language, it is most reasonable to interpret the word "your" in a non-technical way to apply to Morgan Stanley accounts created and controlled by Richards regardless of her legal capacity.  All of these accounts were "her" accounts.  Because Richards created and controlled the Education Foundation Trust account at Morgan Stanley any claims by Richards as trustee of the Education Foundation Trust are covered by the arbitration provisions contained in the contracts discussed above.  (2d Supplemental Thomases Decl.  Exs. A, B.)

Furthermore, and alternatively, Richards's claims as trustee of the Education Foundation Trust are inextricably intertwined with her other claims.  The Education Foundation Trust is alleged to have been a "scheme" by Jennings to increase his trading activity.  (Compl. ¶ X.)  Any claims of the Education Foundation

4

necessarily "arise out of" claims by Richards in her individual capacity, such that the arbitration provisions, if valid, would also cover these claims. Therefore, any claims by Richards as trustee of the Education Foundation Trust are subject to arbitration. <u>See, e.g.</u>, <u>In re Prudential Secs., Inc</u>, 2005 WL 726605 at *3 (Tex. App. 2005).

By contrast, the Irrevocable Life Insurance Trust account was not controlled by Richards. Although Richards was the settlor of the Irrevocable Life Insurance Trust, she retained no legal control over either the trust or the Morgan Stanley trust account. It was not "hers" and, therefore, does not fall within the "your account" language of the arbitration clause. The account opening form and the computerized account information for the Irrevocable Life Insurance Trust account list Richard Keene as the trustee and account holder. (<u>Id.</u> Ex. C; McKay Decl. Ex. A.) Richards retained no authority to alter the beneficiaries of the trust. (2d Supplemental Thomases Decl. Ex. E.) This account did not belong to Richards. Any claims by Richard Keene, as trustee of the Irrevocable Life Trust, against defendants are not subject to the arbitration agreement between Richards and Morgan Stanley.

B. Defenses to Enforcement

Although arbitration agreements exist for Richards's claims as to the accounts, those agreements may be deemed unenforceable for such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. The validity of the arbitration

clause is decided by applying state contract law. <u>Circuit City Stores v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002). General contract defenses such as fraud, duress, or unconscionability may operate to invalidate an arbitration provision. <u>Id.</u> Because of the federal policy favoring arbitration, the party seeking to avoid arbitration has the burden of demonstrating that the provision is invalid. <u>Moses H. Cone Mem. Hosp.</u>, 460 U.S. at 24-25. Plaintiffs assert that the contract defenses of fraud, duress, unconscionability and undue influence bar enforcement of the arbitration clauses. (Opp'n at 2-4.)

### 1. Fraud

"Fraud in the inducement" may prevent enforcement of an arbitration agreement. <u>Shearson/Am. Express, Inc. v. McMahon</u>, 482 U.S. 220, 226, 107 S.Ct. 2332 (1987). However, in examining a claim of fraud in the inducement, the court is limited to the arbitration clause. <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 404-03, 87 S.Ct. 1801 (1967). Claims as to the validity of the underlying contract are for the arbitrator to decide. <u>Id.</u> The court must look narrowly at whether there was fraud directed at the arbitration clause itself, such as a misrepresentation about the arbitration process. <u>Id.</u>; <u>Moseley v. Elec. & Missile Facilities, Inc.</u>, 374 U.S. 167, 170-71, 83 S.Ct. 1815 (1963); <u>Engalla v. Permanente Med. Group, Inc.</u>, 15 Cal.4th 951, 973, 64 Cal.Rptr.2d 843 (1997). There is no showing of fraud in the inducement as to the arbitration clause. Plaintiffs claim that Jennings misrepresented his expertise to induce

Richards to give him control of her assets is addressed to the entire contract and is for the arbitrator to decide.

"Fraud in the inception" or "fraud in the execution" may bar arbitration where the party's apparent assent to the contract is based upon deception as to the true nature and effect of the documents signed. Id. Again, plaintiffs' showing is inadequate. Plaintiffs' allegations that Jennings misrepresented his abilities and expertise do not show that Richards was duped as to the nature and effect of the various contracts.

### 2. Duress

A contract may be rescinded by a party whose consent was obtained by duress. Cal. Civ. Code § 1689. Duress includes: (1) unlawful confinement of a party or an immediate family member; (2) unlawful detention of the property of any such person; or (3) confinement of such person, lawful in form, but fraudulently obtained or made unjustly harassing or oppressive. Id. § 1570. Unlawful duress also includes the threat of duress, also known as menace, and the threat of economic compulsion. Id.; Restatement (Second) of Contracts § 176 (1981). There are no facts or allegations here to support a finding of duress in the making of the contract or in Richards's agreement to the arbitration clause.

7

3. Unconscionability[1]

In California, a contract is unenforceable only if it is both procedurally and substantively unconscionable. <u>Ting v. AT&T</u>, 319 F.3d 1126, 1148 (9th Cir. 2003). Courts apply a "sliding scale" to determine whether a provision may be enforced, such that a stronger showing on one factor can compensate for a weaker showing on the other. <u>Id.</u>

A contract is procedurally unconscionable if it involves either "oppression" or "surprise." <u>Flores v. Transamerica Homefirst, Inc.</u>, 93 Cal.App.4th 846, 853, 113 Cal.Rptr.2d 376 (2001). These elements are automatically deemed present, making the contract procedurally unconscionable, if the contract is adhesive. <u>Ting</u>, 319 F.3d at 1148. For purposes of this discussion, the court will assume that the contracts were contracts of adhesion.

However, to be unenforceable, the contracts must be substantively unconscionable as well. Substantive unconscionability focuses on whether the terms of the arbitration agreement are overly harsh or one-sided. <u>Amendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d

---

[1] Defendants cite <u>Cohen v. Wedbush, Noble, Cooke, Inc.</u>, 841 F.2d 282, 286 (9th Cir. 1988), for the proposition that arbitration provisions in brokerage agreements, like the one at issue here, are "not unconscionable as a matter of law." (Reply at 2-3.) However, <u>Cohen</u> was based on the premise that state law principles of unconscionability may not be invoked to bar arbitration of disputes under the FAA, a premise that was reconsidered and rejected in <u>Ticknor v. Choice Hotels Int'l</u>, 265 F.3d 931 (9th Cir. 2001).

745 (2000). As discussed above, plaintiffs have the burden of demonstrating that the arbitration provisions are invalid. Moses H. Cone Mem. Hosp., 460 U.S. at 24-25. Plaintiffs have not presented evidence showing that the terms of the arbitration agreement are harsh or one-sided. Therefore, plaintiffs do not carry their burden of demonstrating unconscionability.

### 4. Undue Influence

A court reviewing a claim of undue influence looks at whether there was voluntary assent to the arbitration provision. Ford v. Shearson Lehman/Am. Express, Inc., 180 Cal.3d 1011, 1027-29, 225 Cal.Rptr. 895 (1986). There are three different types of undue influence under California law: (1) use of a confidential or fiduciary relationship to obtain an unfair advantage; (2) taking unfair advantage of another's weakness of mind; or (3) taking a grossly oppressive and unfair advantage of another's necessities or distress. Cal. Civ. Code § 1575. A contract obtained through undue influence is voidable by the party who was unduly influenced. Id. § 1689.

The first type of undue influence arises where a fiduciary relationship exists between the parties. Id. § 1575. Where a fiduciary or agency relationship exists, any transaction which allows the fiduciary to obtain an advantage over the client is presumptively invalid, and the burden is on the fiduciary to demonstrate that the agreement is fair and that it was made freely and voluntarily. Webb v. Saunders, 79 Cal.App.2d 863, 870, 181 P.2d 43 (1947). As with the claim of substantive

1 unconscionability, plaintiffs have presented no evidence that the
2 arbitration provisions gave defendants an advantage over
3 Richards, such that a presumption of undue influence would arise.
4     The second and third types of undue influence -- taking
5 advantage of another's weakness of mind or distress -- apply
6 where there is no confidential relationship between the parties.
7 The definitive California case, Odorizzi v. Bloom Sch. Dist., 246
8 Cal.App.2d 123, 131, 54 Cal.Rptr. 533 (1966), sets out two
9 required elements for making a successful claim of undue
10 influence under these theories: (1) undue susceptibility of the
11 servient person, and (2) excessive pressure by the dominating
12 person.  In determining whether the person was unduly
13 susceptible, factors such as age, physical condition, or
14 emotional anguish may be considered.  Id.  While the age of the
15 plaintiff is relevant to a finding of undue influence, old age
16 alone may be insufficient to find undue influence.  Nessen v.
17 Nessen, 218 Cal. 59, 61, 21 P.2d 415 (1933); Creason v. Creason,
18 123 Cal.App. 455, 457-58, 11 P.2d 451 (1932); Gosnell v. Lloyd,
19 215 Cal. 244, 255-56, 10 P.2d 45(1932).
20     Richards's advanced age, unremitting back pain, lack of
21 immediate family, and inexperience in investing support a finding
22 of undue susceptibility.  However, plaintiffs have not presented
23 evidence of excessive pressure or overpersuasion by Jennings in
24 inducing Richards to sign the contracts containing the
25 arbitration provisions.  (Daniell Decl. ¶ 4; Compl. VII.)
26 Plaintiffs fail to show that Richards's acquiescence to the

10

arbitration clauses was obtained through undue influence.

Plaintiffs have not carried their burden of demonstrating that the arbitration provisions are unenforceable under any of the proposed state-law contract defenses. The arbitrations provisions are valid and enforceable as against all claims by Richards in her individual and trust capacity.

### C. Arbitrability of Particular Claims

Plaintiffs argue that the elder abuse claim is not subject to arbitration. (Opp'n at 4-5.) The arbitration provisions are broad and extend to "all controversies" arising out of or concerning Richards's accounts with Morgan Stanley. (Thomases Decl. Exs. A-D.) The duty to enforce arbitration agreements applies even where statutory claims are present, such that the nature of the claim is immaterial to its arbitrability. Shearson/Am. Express, 482 U.S. at 227; Prima Paint, 388 U.S. at 395. This duty extends even to cases arising under a federal statute designed to further important social policies, because these policies can be effectively enforced through arbitration. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513 (2000). The elder abuse claim is subject to arbitration.

### D. Conditions of Arbitration

In the event that the court found their claims to be arbitrable, plaintiffs request that the arbitration be held in Redding, CA. (Id.) Section 4 of the FAA generally requires that arbitration ordered by the court be held within the district in

11

which a petition for an order directing such arbitration is filed. 9 U.S.C. § 4. However, the FAA rules governing arbitration do not apply where the parties have clearly provided otherwise. Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468, 469, 109 S.Ct. 1248 (1989). Here, the contract provides for the location of the arbitration -- "the location where the selected forum regularly conducts such proceedings nearest to the Dean Witter office carrying the account at the time the claim arose." (Thomases Decl. Exs. A-D.) The location of the arbitration is, therefore, governed by the arbitration provisions and cannot be ordered by the court.

    Plaintiffs also ask that any deposition of Richards be expedited and videotaped and that the court require that the arbitration be completed in four months. (Opp'n at 7.) Although the court retains authority to grant provisional remedies during the course of arbitration, that authority is used to maintain the status quo during the arbitration, rather than set the terms of arbitration. See, e.g., PMS Distrib. Co. v. Huber & Suhner, A.G., 854 F.2d 355, 358 (9th Cir. 1988) (holding that the district court has the authority to grant a writ of possession while arbitration is pending). Once the court has determined that the arbitration agreement is valid and enforceable, the arbitration proceeds according to the terms of the agreement and the direction of the arbitrator, without interference of the court. Plaintiffs' requests are DENIED. Of course, plaintiffs may make these requests of the arbitrator.

1   Defendants request dismissal of this action in the event
2 arbitration is compelled. (Mot. at 5.)  Because not all claims
3 are subject to arbitration, dismissal is inappropriate. However,
4 the court has the inherent power to stay proceedings "pursuant to
5 its power to control its docket and calendar and to provide for a
6 just determination of the cases pending before it." <u>Leyva v.
7 Certified Grocers of Cal., Ltd.</u>, 593 F.2d 857, 864 (9th Cir.
8 1979).  The pendency of independent proceedings, including
9 arbitration proceedings, which could bear upon the case, may
10 justify a stay. <u>Id.</u> at 863-64.  Because the outcome of the
11 arbitration proceeding is relevant to, may determine Keene's
12 claims, a stay is appropriate here.  The remaining claims are,
13 therefore, stayed until completion of the arbitration proceeding.

### III.

Defendants' motion to compel arbitration is GRANTED as to claims by Richards in her individual and trustee capacities, but DENIED as to claims by Keene in his capacity as trustee. Defendants' request to dismiss is DENIED, but the remaining claims are STAYED pending completion of arbitration. Plaintiffs' requests for certain conditions of arbitration are DENIED. IT IS SO ORDERED this 17 day of June, 2005.

_____
DAVID F. LEVI
United States District Judge

13